**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

WEIPING LIU,

                        Plaintiff,                6:16-cv-01080 (BKS/TWD)

v.

THE INDIUM CORPORATION OF AMERICA and
NING-CHENG LEE,

                        Defendants.

**Appearances:**

*For Plaintiff:*
Phillip G. Steck
Cooper Erving & Savage LLP
39 North Pearl Street, 4th Floor
Albany, NY 12207

*For Defendants:*
Kevin G. Martin
Martin & Rayhill, PC
421 Broad Street
Utica, NY 13501

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Weiping Liu brings this action against his former employer, the Indium Corporation of America ("Indium"), and his former supervisor, Ning-Cheng Lee, Vice-President of Technology. (Dkt. No. 32). Plaintiff, who is a person of Chinese Asian race, alleges that Defendants terminated his employment in retaliation for his complaints of race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and 42 U.S.C. § 1981. (Dkt. No. 32). Presently before the Court are the parties' motions in

limine. (Dkt. Nos. 111, 116). On November 20, 2019, the Court held oral argument on these motions. For the reasons that follow, the parties' motions in limine are granted in part and denied in part.

## II. DISCUSSION

### A. Plaintiff's Motions in Limine

#### 1. July 26, 2018 Letter

Plaintiff moves to preclude Defendants from introducing any evidence of a letter, dated July 26, 2018, that he wrote to the SMTA professional society on the basis that it is irrelevant and does not qualify as "after-acquired evidence." (Dkt. No. 111, at 1). Defendants argues that it is relevant on Plaintiff's "disruptive attitude" and that it is admissible as after-acquired evidence of conduct that would result in his termination. (Dkt. No. 112, at 2–3).

##### a. Disruptive Employee

In the letter, (Dkt. No. 123, at 1–4), Plaintiff states that he is "writing to report fraud or falsification of research papers by Ning-Cheng Lee (head of R&D at Indium Corporation) and published in SMTA Conference Proceedings" and that he is requesting that SMTA "investigate and take action to correct these problems." (Dkt. No. 123, at 1). Defendants initially argued that because SMTA did not respond to the letter it is reasonable to infer that SMTA does not believe Plaintiff's assertions that Indium's papers are fraudulent. (Dkt. No. 122, at 2). This inference, Defendant argued, is further evidence of the "disruptive attitude" and "disregard for Indium's commercial well being" that led to Plaintiff's termination. (*Id*.). At oral argument, however, Plaintiff's counsel reported that Plaintiff had received an email from SMTA stating that it would look into Plaintiff's allegations once this case had ended. Accordingly, Defendants' argument for admissibility based on SMTA's lack of response is moot.

2

To the extent Defendants argue that the letter on its own is evidence of Plaintiff's disruptive behavior toward Indium, the Court finds it to be of limited probative value. Although it alleges that the fraudulent conduct occurred at Indium during the years of Plaintiff's employment, Plaintiff wrote the letter two years after his termination. Moreover, the gist of these allegations is not new: in his Complaint Plaintiff alleged fraud, scientific misrepresentations and "falsification of a patent application" by Lee. (*See* Dkt. No. 32, ¶¶ 20, 22–27). In addition, the letter contains accounts of the design, investigation, and testing of solder alloys at Indium, (*see, e.g.*, Dkt. No. 123, at 1 ("I believed the Mn addition was a wrong direction for the solder paste products, based on my previous initial testing results with SACm solder pastes and the iNEMI consortium testing results of TCT (thermal cycling tests) on SACm105 . . . solder spheres.")), which are complex, would require explanation, and would confuse, and distract from, the claims in this case. Thus, the Court finds that any probative value in admitting the letter for the purpose of showing Plaintiff was a disruptive employee is substantially outweighed by the danger of confusing the issues. Fed. R. Evid. 403. Accordingly, the letter is not admissible for this purpose.

### b. After-Acquired Evidence

Defendants also argue that the letter is admissible as "after-acquired evidence" that Plaintiff breached "the non disclosure agreement," which would have resulted in his termination, and "cut[s] off his right to front pay." (Dkt. No. 122, at 2–3). Plaintiff responds that Defendants have not pleaded after-acquired evidence as an affirmative defense and did not disclose their intent to use the letter until November 6, 2019, and that Plaintiff did not disclose any confidential documents in the letter. (Dkt. No. 111, at 2). At oral argument, Defendants acknowledged that there has been no discovery on this issue.

"Under the after-acquired evidence doctrine, evidence that an employee would have been terminated for lawful reasons may render h[im] ineligible for front-pay and reinstatement and

3

limit back pay to the period between the unlawful termination and the date on which the discovery was made." *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 530 (E.D.N.Y. 2018) (citing *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362–363 (1995)). "Where an employer seeks to rely upon [the] doctrine, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362–63. Even assuming Defendants can overcome the hurdles that Plaintiff and the Court have identified—(i) failure plead after-acquired evidence as an affirmative defense,[1] (ii) failure to disclose an intent to raise this argument until one month before trial, (iii) failure to conduct any discovery on this issue, and (iv) a rationale for admitting it here when the weight of authority precludes the admission of post-termination misconduct[2]—without the non-disclosure agreement or a proffer indicating how this letter would justify termination for a violation of that agreement, there is no basis for concluding that Plaintiff's writing of this letter would have led to his termination. *Sanders v. Madison Square Garden, L.P.*, No. 06-cv-589, 2007 WL 2254698, at *11, 2007 U.S. Dist. LEXIS 57319, at *32 (S.D.N.Y. Aug. 6, 2007) ("Even if [the employee] did violate [the employer's] policy, it is [the employer's] burden to show that such wrongdoing

---

[1] While it may not be a defense to liability, *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 96-cv-8414, 2014 WL 10447206, at *7, 2014 U.S. Dist. LEXIS 184807, at *25 (S.D.N.Y. Oct. 24, 2014) ("[S]uch after-acquired evidence does not appear to be a defense to liability. Instead, the case law suggests that it simply limits the relief available to a claimant." (citing *McKennon*, 513 U.S. at 362–63)), "a fair majority of courts in the Second Circuit consider after-acquired evidence to be an affirmative defense." *Zhou v. State Univ. of New York Inst. of Tech.*, No. 6:08-cv-0444, 2013 WL 2237842, at *3, 2013 U.S. Dist. LEXIS 71407, at *9 (N.D.N.Y. May 21, 2013).

[2] "The Second Circuit has never had occasion to decide whether post-employment misconduct can support an after-acquired evidence defense." *Sanders*, 2007 WL 2254698, at *12, 2007 U.S. Dist. LEXIS 57319, at *35 (citing one circuit case holding that "it can," another circuit case holding that "it might," but noting that "the weight of authority in the district courts is to the contrary"); *see also Ellis v. Cygnus Enter., LLC*, No. 11-cv-771, 2012 WL 259913, at *3, 2012 U.S. Dist. LEXIS 10011, at *9 (E.D.N.Y. Jan. 3, 2012) (noting that *Sanders* "was decided over a decade ago; however, and the Second Circuit has not yet ruled on this issue"), *report and recommendation adopted*, 2012 WL 259910, 2012 U.S. Dist. LEXIS 9997 (E.D.N.Y. Jan. 27, 2012).

would have inevitably led to [the employee's] termination."), *withdrawn in part on other grounds*, 525 F. Supp. 2d 364 (S.D.N.Y. 2007). Accordingly, Plaintiff's motion to preclude Defendants from offering the July 26, 2018 letter is granted.

### 2. "Constant Complainer" Evidence

Plaintiff seeks to preclude "[a]ny argument by the defense that plaintiff was a constant complainer because of things he cited as evidence of discrimination in his complaint." (Dkt. No. 111, at 1). Plaintiff argues that the allegations in the complaint "cannot possibly be used as a justification for a termination," and that Defendant must "show that he complained about these specific things . . . when he was employed by Indium." (*Id.* at 1, 3). At oral argument, Plaintiff indicated that he is concerned Defendants will use the allegations in the Complaint to paint him as a "constant complainer" in front of the jury. Defendants respond that statements in the Complaint, including the allegation that Plaintiff believed "he was 'enslaved,' underpaid, and that Dr. Lee was not taking his side his various argument with Hong Wen Zhang," are "fair game in this case." (Dkt. No. 122, at 3).

A party's statement in a pleading is a party admission, thus it appears anything from the Complaint would be admissible at trial. *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) (finding the trial court "erred in refusing to permit the original complaint to be received in evidence," explaining that "[a] party . . . cannot advance one version of the facts in [his] pleadings, conclude that [his] interests would be better served by a different version, and amend [his] pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." (quoting *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)). The Complaint is admissible as evidence of an admission, not as evidence that Plaintiff was disruptive when he was employed at Indium. *See Butler v. Coca-Cola Refreshments USA, Inc.*, No. 12-cv-1791, 2013 WL 3324995, at *2 n.2, 2013 U.S. Dist. LEXIS 92086, at *5 n.2

5

(E.D.N.Y. July 1, 2013). As Defendants acknowledged, however, this issue is better evaluated in the context of trial. Accordingly, the Court reserves decision on this matter.

### 3. "A Great Company" Evidence

Plaintiff moves to preclude Defendants from introducing evidence that "Indium is a great company that employs a lot of people," on the ground that it is "a naked appeal to sympathy that has no place at trial." (Dkt. No. 111, at 3). Defendants assert that "the incredible growth and success of [Indium] is relevant to the decisions regarding marketing, . . . terminating Plaintiff, [and] maintaining a cohesive work group" and that the jury is "entitled to know that the person making . . . decisions [about Plaintiff's employment] has an outstanding track record of successful management." (Dkt. No. 122, at 4). At oral argument Defendants stated that they have no intention of presenting the closing argument appeal to jury sympathy that Plaintiff seeks to preclude. As the Court explained at oral argument, Defendants are entitled to introduce background evidence regarding Indium's structure and employees. Accordingly, at this point Plaintiff's motion to preclude Indium as a "great company" arguments or evidence is denied. This is without prejudice to renewal at trial if Defendants seek to present such evidence or argument.

### 4. Complaints by Yan Liu and Mark Olearczyk

Plaintiff moves to preclude Dr. Lee from testifying that Yan Liu and Mark Olearczyk, complained to him about Plaintiff's behavior. (Dkt. No. 111, at 3–4). According to Plaintiff, any testimony by Dr. Lee "about what people supposedly said, without any evidence that they said these things" is inadmissible hearsay. (*Id.* at 4). Defendants oppose Plaintiff's motion and assert that Dr. Lee will testify that Liu and Olearczyk told him that "they had difficulties" with Plaintiff and that they seek this testimony not for the truth of the statements by Liu and Olearczyk "but for the impact" they had on Dr. Lee. (Dkt. No. 122, at 4).

Dr. Lee's testimony concerning what Liu and Olearczyk told him, if offered for the truth of those statements, would be inadmissible hearsay. *See* Fed. R. Evid. 801(c) ("Hearsay means a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement."); *see also* Fed. R. Evid. 802 ("Hearsay is not admissible."). Out-of-court statements may, however, still "be received in evidence for a purpose other than their truth." *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006). An out of court statement offered as evidence of a witness' state of mind does not fall within the hearsay definition "because it was not offered to prove the truth of the matter asserted." *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988) (citing Fed. R. Evid. 801(c)). The proponent of such evidence "must satisfy Federal Rules of Evidence 401 and 403, that is, (1) the non-hearsay purpose for which the evidence is offered must be relevant and (2) the probative value of the evidence for this non-hearsay purpose must not be outweighed by the danger of unfair prejudice." *Paulino*, 445 F.3d at 217. But "the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice." *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994). If such testimony is limited to the purpose of showing the impact Liu and Olearczyk's statements had on Dr. Lee in assessing Plaintiff's behavior as an employee, such evidence would be relevant to the issues surrounding Plaintiff's termination and the evidence's probative value would substantially outweigh the danger of unfair prejudice to Plaintiff. As the Court indicated at the pretrial conference, it will, at Plaintiff's request, provide a limiting instruction to the jury both at the time the evidence is introduced and in its jury instructions at the end of trial. Accordingly, Plaintiff's motion is denied.

### 5. Witnesses Yan Liu and Sihai Chen

Plaintiff moves to preclude Liu and Sihai Chen[3] from testifying at trial on the ground that Defendants never disclosed them as witnesses, as required by Fed. R. Civ. P. 26. (Dkt. No. 111, at 4). Defendants argue that because they intend to call Liu and Chen as rebuttal witnesses, they were not required to disclose them "under Rule 26." (Dkt. No. 122, at 4).

Rule 37 provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[I]nstead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).

Ultimately, preclusion under Rule 37 "is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. New York*, 837 F.2d 587, 591 (2d Cir. 1988). In determining whether to exclude a witness under Rule 37(c)(1), courts must consider: (1) the party's explanation for the failure to comply with its disclosure obligations; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

---

[3] Plaintiff also move to preclude Olearczyk from testifying at trial on the same basis, (Dkt. No. 111, at 4), but because Defendants have not listed Olearczyk as a witness, (Dkt. No. 114), and have not opposed this aspect of Plaintiff's motion, Plaintiff's motion is denied as moot.

8

Here, Defendants contend that they had no obligation to disclose Liu or Chen under Rule 26 because they only intend to offer them as rebuttal witnesses and, in any event, Liu "was disclosed during Dr. Lee's testimony as someone he knew of who had disagreements with Plaintiff." (Dkt. No. 122, at 4). There is, however, "no rebuttal exception to Rule 26(a)(1),"[4] *Harris v. Lewis*, No. 16-cv-1214, 2019 WL 5592747, at *2 n.1, 2019 U.S. Dist. LEXIS 188310, at *5 n.1 (E.D.N.Y. Oct. 30, 2019) (quoting *Widman v. Stegman*, No. 13-cv-193, 2015 WL 13832105, at *3 (N.D.N.Y. Apr. 28, 2015)), and despite Liu's identification in Dr. Lee's deposition, Defendants do not dispute that they never disclosed Liu as a witness.

At the pretrial conference, defense counsel explained that Defendants did not disclose Liu or Chen as witnesses because the Court's discovery disclosure forms state that rebuttal witnesses need not be disclosed "at this time,"[5] and that, in any event, Dr. Lee had identified Liu in his deposition testimony as an individual with whom Plaintiff had difficulty getting along. (Dkt. No. 86-1, at 186). Defense counsel conceded that Chen was never identified during discovery. Thus, Defendants have offered some, though not a convincing, explanation for their failure to disclose Liu or Chen as witnesses. Defendants assert that testimony by Liu and Chen will rebut Plaintiff's expected contention at trial that he had no conflicts with employees other than Zhang, and that their testimony that they had difficulty working with Plaintiff will corroborate Dr. Lee's reasons for terminating Plaintiff's employment. Plaintiff argues that he is greatly prejudiced by this late disclosure as there is so little time before trial during which to depose these witnesses. Finally, as

---

[4] There is, however, an impeachment exception; Rule 26's disclosure requirement does not apply to evidence offered "solely for impeachment." Fed. R. Civ. P. 26(a)(3)(A). Thus, failure to disclose would pose no bar to a party calling an undisclosed rebuttal witness for impeachment purposes. *See Ling-Rong Chen v. City of Syracuse*, 385 F. App'x 41, 42 (2d Cir. 2010) (affirming district court's decision to allow previously undisclosed rebuttal witness for impeachment purposes).

[5] Defendants have not provided the Court with a copy of this form.

9

it advised the parties at oral argument, the Court is not inclined to grant a continuance, given the length of time this action has been pending.

Having considered the relevant factors, the Court concludes that because Plaintiff has been aware since Dr. Lee's deposition that Liu was an employee with whom he was alleged to have had a conflict, and because the time needed to prepare to meet this testimony, including conducting a brief deposition, will be minimal given the very limited nature of Liu's testimony, the prejudice is minimal and preclusion would be too harsh a remedy. Indeed, the Court alerted the parties that it did not intend to preclude Liu as a witness and directed Defendants to cooperate in making Liu available for deposition in a text order entered on November 21, 2010. (Dkt. No. 126).

The Court reaches a different conclusion, however, with respect to Chen. Because Defendants did not identify Chen at any point during this extensively litigated case as an individual with knowledge of the relevant facts[6] and in light of the difficulties Plaintiff would face in preparing to meet this entirely new testimony, preclusion of her testimony, even as a rebuttal witness, is warranted. Accordingly, Plaintiff's motion to preclude is denied as to Liu and granted as to Chen. To the extent Defendants seek to call either Liu or Chen merely to impeach Plaintiff's testimony they may do so.

### B. DEFENDANTS' MOTIONS IN LIMINE

#### 1. Scope of Evidence

Defendants seek to "[l]imit Plaintiff from expanding the scope of the trial beyond" the remaining retaliation claim and preclude Plaintiff from presenting evidence that Dr. Lee

---

[6] Indeed, unlike Liu, Dr. Lee did not identify Chen during his deposition as an individual who complained about having conflicts with Plaintiff.

discriminated against him based on his race.[7] (Dkt. No. 116, at 2). Specifically, Defendants move to preclude: (i) Plaintiff from calling Greg Evans to testify at trial, (ii) Plaintiff from eliciting testimony from his former coworker, Ed Ho, regarding his "opinion about discrimination at Indium" and about his belief that "he was un-justly punished for a sexual harassment incident," (iii) Plaintiff from testifying or presenting exhibits concerning his complaints about Zhang, (iv) Plaintiff from testifying about the sexual harassment complaints against Ho and Arnab Dasgupta, and (v) Plaintiff from testifying about the promotions and recognition that employees in other departments received but he did not. (Dkt. No. 116, at 3). Plaintiff responds that unless Defendants "are willing to stipulate that plaintiff had an objectively reasonable good faith belief that he was being discriminated against on the basis of his race," he "***must*** introduce such evidence" to prove his retaliation claim. (Dkt. No. 121, at 1).

A plaintiff asserting a retaliation claim must show that he engaged in protected activity. The Second Circuit has explained that "[a]n employee's complaint may qualify as protected activity, satisfying the first element of this test, 'so long as the employee'" has a "'good faith, reasonable belief that [he] was opposing an employment practice made unlawful by Title VII.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (first quoting *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001), second quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). With these principles in mind, the Court considers Defendants' arguments.

---

[7] Plaintiff's race discrimination claim was dismissed at the summary judgment stage. *Liu v. Indium Corp. of Am.*, No. 16-cv-1080, 2019 WL 3825511, at *19, 2019 U.S. Dist. LEXIS 137786, at*52–53 (N.D.N.Y. Aug. 15, 2019).

### a. Greg Evans

Plaintiff asserts that Greg Evans will testify, *inter alia*, about his response to Plaintiff's complaint about Zhang and his meeting with Plaintiff, Dawn Roller, and Dr. Lee on January 24, 2014, (Dkt. No. 121, at 5–6; Dkt. No. 86-1, at 635), and his knowledge of the cubicle switch that preceded Plaintiff's termination, (Dkt. No. 121, at 6). Plaintiff has alleged that he complained of mistreatment by white managers at the January 24, 2014 meeting, and that Evans "used intimidating and abusive gestures to show that [Plaintiff] should stop complaining of mistreatment." *Liu*, No. 16-cv-1080, 2019 WL 3825511 at *6, 2019 U.S. Dist. LEXIS 137786, at *17. This evidence is relevant to the background of this case, Evans' knowledge about Plaintiff's difficulties with Zhang and Evans' discussion of Plaintiff's termination with Dr. Lee. Accordingly, Defendants' motion to exclude Evans' testimony is denied.

### b. Ed Ho and Sexual Harassment Complaints

Plaintiff has identified Ed Ho as a witness, (Dkt. No. 109, at 2). Plaintiff intends to elicit testimony from him that in 2012, Ho, who is Asian American, was the subject of an investigation by the Human Resources Department ("HR") following a complaint by a white employee and will testify about HR's procedures in conducting the investigation. (Dkt. No. 121, at 4). Plaintiff also intends to introduce evidence concerning Defendants' handling of a sexual harassment complaint by a white employee against Arnab Dasgupta, who is also Asian American. As Defendants' handling of complaints by white employees is relevant to Plaintiff's claim that they handled his complaints about Zhang differently, evidence concerning the complaints and the procedures Defendants used to address them are admissible to show his belief that he was being discriminated against because of his race, and were part of the basis for his complaints in

December 2013 and February 2016, that his complaints of coworker harassment were handled differently because of his race. (Dkt. No. 86-1, at 626–27).[8]

As discussed at the summary judgment stage, Defendants' allegedly different treatment of complaints by white employees and complaints by Plaintiff may be some evidence of race discrimination and is therefore admissible to show Plaintiff's belief that he was experiencing racial discrimination.[9] *See Liu*, 2019 WL 3825511, at \*15, 2019 U.S. Dist. LEXIS 137786, at \*41. Defendants' motion to preclude this evidence is denied.

### c. Hong Wen Zhang

Plaintiff's complaints about Zhang and Defendants' handling of them are integral to his complaint of race discrimination and are relevant to the cubicle switch that led to his termination. While Plaintiff will, of course, be limited to introducing testimony and exhibits that are relevant to the claims at issue, the Court finds no basis to exclude evidence concerning Zhang; indeed, Defendants have listed Zhang as a trial witness. (Dkt. No. 114, at 1). Accordingly, Defendants' motion to exclude evidence concerning Zhang is denied.

### d. Promotions and Recognition[10]

The Court previously found that Plaintiff had failed to present any evidence "from which a jury could infer that his working conditions," including the alleged failure to promote, or

---

[8] At oral argument, Plaintiff's counsel also referred to an October 12, 2012, email Ho wrote to the R&D department, and which he intends to introduce at trial. The email states: "We are all Americans and no one should be treated like slave [sic] which is against Federal Law." (Dkt. No. 86-1, at 1016). The Court will address this email at trial.

[9] While Defendant is worried that Plaintiff also "may try to elicit testimony from witnesses" such as Ho "regarding their opinion about discrimination at Indium," (Dkt. No. 116, at 5), Plaintiff stated at oral argument that he will not seek to admit any such evidence.

[10] The Court previously found that Plaintiff's allegations concerning unemployment compensation and required workdays did not suggest discriminatory treatment because he asserted the policy was applicable to the entire R&D department. *Liu*, 2019 WL 3825511, at \*13, 2019 U.S. Dist. LEXIS 137786, at \*35–36; (*see also* Dkt. No. 86-1, ¶ 50). In his response to Defendants' motion in limine, Plaintiff now asserts that Ho will testify that in 2009, he was "forced to work 5 days for 4 days of pay plus one day of unemployment compensation" while Lee Kresge, who is Caucasian and also a member of the R&D department, "worked 4 days and received 4 days of pay plus one day of

Indium's recognition of employee achievements, "were based in any way on his race or racial stereotyping." *Liu*, 2019 WL 3825511, at *13, 2019 U.S. Dist. LEXIS 137786, at *36. To the extent, however, Plaintiff can show that this evidence has probative value and that it is not substantially outweighed by a danger of confusing the issues, the Court will reconsider this issue. Accordingly, the Court reserves decision.

### 2. Evidence of Dismissed Claims

Defendants move to preclude Plaintiff from introducing evidence "regarding discrimination based on race or any other dismissed claims." (Dkt. No. 116, at 3), and request that in the event the Court allows such evidence, that they be allowed to argue, and that the Court instruct the jury, "that these claims were dismissed by the Court on the merits in [sic] summary judgment." (Dkt. No. 116, at 3–4). As discussed, Plaintiff may introduce evidence of the conduct underlying his belief that he was being discriminated against because of his race. Defendants' request for permission to argue to the jury that the Court dismissed Plaintiff's other claims, and an instruction regarding the Court's decision at the summary judgment stage, is denied. *Cf., Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, at 546 (S.D.N.Y. 2005) ("Placing the five previous decisions in this case before the jury would serve no legitimate purpose. The jurors will be told all they need to know through the evidence admitted at trial.").

### 3. Lay Opinion and "Me Too" Testimony

Defendants seek to preclude Plaintiff and Ho from testifying that they, or "other members of the R&D Department feel there is discrimination." (Dkt. No. 116, at 5). Plaintiff responds that he is "not seeking to introduce any opinion of Ho that he was discriminated against on the basis

---

unemployment compensation without being required to work an extra day." (Dkt. No. 121, at 3). The Court will address this issue at trial in the event it arises.

14

of race." (Dkt. No. 121, at 4). Plaintiff's counsel further stated at oral argument that he does not seek to introduce any "me too" testimony. Accordingly, Defendants' motion is denied as moot.

### 4. Damages Testimony

Defendants seek to preclude Plaintiff from "testifying regarding any actual medical condition or economic calculations" in support of his claim for damages. (Dkt. No. 116, at 9). Defendants further assert that Plaintiff "failed to mitigate his damages" and should be precluded from introducing any evidence of damages for front pay. (*Id.*). The parties resolved Defendants' concerns regarding damages evidence at oral argument and Defendants agreed their arguments concerning mitigation of damages are premature. Accordingly, Defendants' motion to preclude damages testimony is denied as moot and Defendants motion regarding mitigation of damages is denied without prejudice to renewal at trial.

### 5. Limit Evidence to Last Six Months of Employment

Defendants seek an order prohibiting Plaintiff from introducing evidence "that is more than six months prior to his termination," which occurred on May 20, 2016. (Dkt. No. 116, at 9–10). Defendants argue that because Plaintiff must prove a causal connection between the protected activity and adverse action, any events that arose more than six months before his termination are irrelevant. (*Id.*). The Second Circuit has held that "evidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [that] timely claim.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). In addition, subject to Rules 402 and 403, such evidence may be "admissible at trial and could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts." *Jute*, 420 F.3d at 177 & n.7. The Court therefore declines to impose a time limitation on evidence. Accordingly, Defendants' motion is denied.

### 6. Discretionary Management Decisions

Defendants move to preclude Plaintiff from arguing "that the reasons for the cubicle switch were 'spurious' because he does not think it is a wise management technique." (Dkt. No. 116, at 10). Plaintiff responds that he is "entitled to attack management's decisions as lacking any reasonable business justification, discriminatory or retaliatory, and/or motivated by spite or ill will, which would make any such decision a pretext for discrimination." (Dkt. No. 121, at 8). Any evidence that the business decision was merely used as a pretext for retaliation is clearly relevant and admissible. These issues, however, are better addressed in the context of trial. Accordingly, the Court reserves decision.

### 7. Scientific Disputes

Defendants move to limit "Plaintiff's proof regarding his claimed scientific disputes," noting that "Plaintiff appears to want to relitigate whether the SACm product was properly marketed, and whether patent applications were false." (Dkt. No. 116, at 11). Plaintiff's counsel indicated at the pretrial conference that Plaintiff will not be seeking to prove his scientific disputes at trial. Accordingly, Defendants' motion to limit proof regarding the scientific disputes is denied as moot.

## III. CONCLUSION

For these reasons, it is

**ORDERED** the parties' motions in limine, (Dkt. Nos. 111, 116) are **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

Dated: November 25, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge